Harry Shulman, Esq.  (209908; harry@millslawfirm.com)
THE MILLS LAW FIRM
880 Las Gallinas Avenue, Suite 2
San Rafael, California 94903
Telephone: (415) 455-1326
Facsimile: (415) 455-1327

[Additional counsel listed on signature page]

*Counsel for Plaintiff and the Proposed Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SJ VENTURE GROUP, LLC dba PACIFIC IMPORTS INTERNATIONAL, on behalf of itself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MATSON NAVIGATION COMPANY, INC.; ALEXANDER & BALDWIN, INC.; HORIZON LINES, LLC; and HORIZON LINES, INC., <br><br> Defendants. | Case No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

## I. INTRODUCTION

1. Plaintiff SJ Venture Group, LLC dba Pacific Imports International brings this action on behalf of itself individually and on behalf of a plaintiff class (the "Class") consisting of all persons and entities in the United States, and its territories and possessions, who purchased domestic containerized ocean shipping services for service between the continental United States and Hawaii ("Hawaiian Ocean Shipping Services") directly from a defendant from at least April 2004 to the present (the "Class Period").

CLASS ACTION COMPLAINT                                                                                                                          - 1 -

2. Defendants are domestic ocean shipping carriers who collectively transport millions of tons of cargo each year between ports in the contiguous United States and the United States' territories and possessions. Defendants serve routes between the West Coast and Hawaii, and they are the only container service competitors of each other on these routes. Plaintiff alleges that during the Class Period, defendants conspired, combined and contracted to fix, raise, maintain, and stabilize the price at which Hawaiian Ocean Shipping Services would be sold.

3. As a result of defendants' unlawful conduct, plaintiff and the other members of the Class paid artificially inflated prices for Hawaiian Ocean Shipping Services. Such prices exceeded the amount that would have been paid if the prices had been determined by a competitive market without the conspiracy.

## II.    JURISDICTION AND VENUE

4. Plaintiff brings this action under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26), to recover treble damages and costs of suit, including reasonable attorneys' fees, against defendants for the injuries sustained by plaintiff and the members of the Class by reason of the violations, as hereinafter alleged, of Section 1 of the Sherman Act (15 U.S.C. § 1).

5. This action is also instituted to secure injunctive relief against defendants to prevent them from further violations of Section 1 of the Sherman Act, as hereinafter alleged.

6. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1337 and by Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26).

7. Venue is proper in this judicial district because, during the Class Period, one or more of the defendants resided, transacted business, was found, or had agents in this district, and because a substantial part of the events giving rise to plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district.

## III. THE PARTIES

### A. Plaintiff

8. Plaintiff SJ Venture Group, LLC dba Pacific Imports International is a Hawaii corporation with headquarters located at 9811 West Charleston Blvd. Suite 2417 Las Vegas, NV 89117 and a distribution center located at 2612-B Waiwai Loop Honolulu, HI 96819. During the Class Period, plaintiff purchased Hawaiian Ocean Shipping Services directly from one or more of the defendants. As a result of the conspiracy alleged herein, plaintiff was injured in its business and property by reason of the antitrust violations alleged herein.

### B. Defendants

9. Defendant Matson Navigation Company, Inc. is a Hawaii corporation with its principal place of business in Oakland, California. Matson Navigation Company, Inc. is an ocean carrier of containerized freight and automobiles between the West Coast and Hawaii, Guam and the Mid-Pacific. It handles approximately 67 percent of the goods shipped from the West Coast to Hawaii and is a wholly-owned subsidiary of defendant Alexander & Baldwin, Inc. During the Class Period, Matson Navigation Company, Inc. sold Hawaiian Ocean Shipping Services to customers in the United States and its territories and possessions.

10. Defendant Alexander & Baldwin, Inc. is a Hawaii corporation with its principal place of business in Honolulu, Hawaii. Alexander & Baldwin, Inc. is a diversified corporation that provides ocean transportation services through defendant Matson Navigation Company, Inc., the largest of its subsidiaries. During the Class Period, Alexander & Baldwin, Inc. sold Hawaiian Ocean Shipping Services to customers in the United States and its territories and possessions.

11. Defendant Matson Navigation Company, Inc. and defendant Alexander & Baldwin, Inc. are collectively referred to herein as "Matson."

CLASS ACTION COMPLAINT - 3 -

12. Defendant Horizon Lines, LLC is a Delaware limited liability company with its principal place of business in Charlotte, North Carolina. It operates a fleet of 21 U.S.-flag containerships and 5 port terminals linking the continental United States with Alaska, Hawaii, Guam, Micronesia, and Puerto Rico. Horizon Lines, LLC is a wholly-owned operating subsidiary of defendant Horizon Lines, Inc. During the Class Period, Horizon Lines, LLC sold Hawaiian Ocean Shipping Services to customers in the United States and its territories and possessions.

13. Defendant Horizon Lines, Inc. is a Delaware corporation with its principal place of business in Charlotte, North Carolina. Horizon Lines, Inc. is publicly traded on the New York Stock Exchange and operates as a holding company for its wholly-owned subsidiaries, including defendant Horizon Lines, LLC. Together with its subsidiaries, Horizon Lines, Inc. is the nation's leading domestic ocean shipping and integrated logistics company, accounting for approximately 38 percent of total U.S. marine container shipments from the continental United States to Alaska, Puerto Rico, Hawaii, Guam, and Micronesia. During the Class Period, Horizon Lines, Inc. sold Hawaiian Ocean Shipping Services to customers in the United States and its territories and possessions.

14. Defendant Horizon Lines, Inc. and defendant Horizon Lines, LLC are collectively referred to herein as "Horizon."

C.  **Agents and Co-Conspirators**

15. The acts alleged against the defendants in this Complaint were authorized, ordered, or done by their officers, agents, employees, or representatives, while actively engaged in the management and operation of defendants' businesses or affairs.

16. Certain other persons, firms, corporations and entities have participated as unnamed co-conspirators in the violations and conspiracy alleged herein. In order to engage in

CLASS ACTION COMPLAINT                                                                                                                                          - 4 -

the offenses charged and violations alleged herein, these co-conspirators have performed acts and made statements in furtherance of the antitrust violations and conspiracies alleged herein. All averments in this Complaint against named defendants are also averred against these unnamed co-conspirators as though set forth at length.

17. At all relevant times, each defendant was an agent of the other defendants, and in doing the acts alleged herein, was acting within the course and scope of such agency. Each defendant ratified or authorized the wrongful acts of each of the defendants. Defendants participated individually and aided and abetted in the improper acts and transactions that are the subject of this action.

## IV. CLASS ACTION ALLEGATIONS

18. Plaintiff brings this action on behalf of itself and as a class action under the provisions of Rule 23(a), Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons and entities in the United States, and its territories and possessions, who purchased containerized domestic ocean shipping services for service between the continental United States and Hawaii ("Hawaiian Ocean Shipping Services") directly from a defendant from at least April 2004 to the present. This class excludes any judicial officer who is assigned to hear any aspect of this action, governmental entities, defendants, co-conspirators, other sellers or providers of Hawaiian Ocean Shipping Services, and the present and former parents, predecessors, subsidiaries and affiliates of the foregoing.

19. Plaintiff believes that there are hundreds, if not thousands, of Class members as above described, the exact number and their identities being known by defendants.

20. The Class is so numerous and geographically dispersed that joinder of all members in impracticable.

CLASS ACTION COMPLAINT                                                                                          - 5 -

21. There are questions of law and fact common to the Class, which questions relate to the existence of the conspiracy alleged, and the type and common pattern of injury sustained as a result thereof, including, but not limited to:

    a. Whether defendants and their co-conspirators engaged in a combination and conspiracy among themselves to fix, raise, maintain and/or stabilize prices of Hawaiian Ocean Shipping Services and/or engaged in market allocation for those services sold in the United States and its territories and possessions;

    b. The identity of the participants in the conspiracy;

    c. The duration of the conspiracy alleged in this Complaint and the nature and character of the acts performed by defendants and their co-conspirators in furtherance of the conspiracy;

    d. Whether the alleged conspiracy violated Section 1 of the Sherman Act;

    e. Whether the conduct of defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business and property of plaintiff and other members of the Class;

    f. The effect of defendants' conspiracy on the prices of Hawaiian Ocean Shipping Services sold in the United States and its territories and possessions during the Class Period; and

    g. The appropriate measure of damages sustained by plaintiff and other members of the Class.

22. Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of Class members and plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff is a direct purchaser of Hawaiian Ocean Shipping Services and its interests are

consistent with and not antagonistic to those of the other members of the Class. In addition, plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

23. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

24. Defendants have acted, and have refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

25. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The Class is readily definable and is one for which records should exist in the files of defendants and their co-conspirators. Prosecution as a class action will eliminate the possibility of repetitious litigation. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individual actions would engender. Class treatment will also permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this Complaint. This class action presents no difficulties of management that would preclude its maintenance as a class action.

### V.   TRADE AND COMMERCE

27. During the Class Period, defendants sold substantial quantities of Hawaiian Ocean Shipping Services in a continuous and uninterrupted flow of interstate commerce to customers throughout the United States.

CLASS ACTION COMPLAINT                                                                                                          - 7 -

28.     The business activities of defendants that are the subject of this action were within the flow of, and substantially affected, interstate trade and commerce.

## VI. FACTUAL ALLEGATIONS

### A. Importance of Ocean Transport

29.     Ocean shipping is a highly effective method of moving large quantities of non-perishable goods and raw materials. The major commodities shipped through ocean shipping include crude petroleum, refined petroleum products, chemicals, manufactured goods, farm products, and coal.

30.     Charges for ocean carriage are by container size, with containers ranging in size from 20 to 53 feet in length and 8 to 9.5 feet in height. Charges are also made by revenue ton, which is the greater of the cubic measure or weight of a shipment as packed for shipping, and such charges as the following: base ocean freight, terminal handling charge, fuel surcharge, warfage Hawaii, warfage West Coast, neighbor island arbitrary, drayage, intermodal rail, and demurrage. In 2002, United States domestic ocean trades amounted to 196 million metric tons.

31.     The shipping industry is protected by the laws of the United States in recognition of its importance to national security, defense, and international trade. Since the 1800s, ship owners have participated in conferences to coordinate service, exchange market information, and to agree upon rates. In the international ocean shipping industry, these liner conferences, which have many cartel-like characteristics, have been exempt from the antitrust laws.

32.     Unlike international ocean shipping, the exchange of market information, agreements on prices, agreements on capacity, allocation decisions, and the use of each other's capacity to sell to one's own shippers, are prohibited for carriers operating domestic ocean routes.

CLASS ACTION COMPLAINT                                                                 - 8 -

33. The domestic ocean trade is comprised of the following three sectors: (a) noncontiguous trade between the continental United States and Puerto Rico, Alaska, Hawaii, Guam, and other U.S. Pacific Islands; (b) coastwise trade along the Atlantic, Gulf, and Pacific coasts, as well as trade between coasts and the St. Lawrence Seaway; and (c) intercoastal trade between the Atlantic or Gulf and Pacific coasts by way of the Panama Canal. This action relates solely to noncontiguous trade between the continental United States and Hawaii.

34. Because of its location, the State of Hawaii depends almost entirely on ocean shipping to import its essential commodities like food, clothing, fuel, building materials, and automobiles, as well as to export its local products like pineapple, sugar, molasses, and livestock, to and from the neighbor islands, the continental United States, and various foreign countries. By one estimate, 98.6 percent of all Hawaii's imports arrive by ocean shipping. In 2003, over 5 million metric tons of cargo was shipped in noncontiguous domestic trade with Hawaii.

35. Using an estimate built up of: 6 sailings per week from the West Coast of the United States, for 52 weeks per year, at an average of 1,000 containers per sailing for both container carriers combined, at an average revenue of about $5,000 per container plus some small revenues in the eastbound direction, the current container revenue in the Hawaii trade is over $1.5 billion.

36. In January 2008, *Pacific Business News* reported that the cost of shipping goods to Hawaii had risen as much as 40 percent since 2005. This was in large part a result of defendants' conspiracy as alleged herein.

**B.    Inferential Evidence of Cartel Activity in the Hawaiian Ocean Shipping Services Industry**

37. The Hawaiian Ocean Shipping Services industry has several characteristics that facilitated a conspiracy, including market concentration, ease of information sharing,

CLASS ACTION COMPLAINT                                                                                           - 9 -

homogeneity of products, and significant barriers to entry.

38. The Hawaiian Ocean Shipping Services market is a duopoly that is conducive to collusion. Defendants Matson and Horizon control 100 percent of the containerized shipping market and 96 percent of the total market for Hawaiian Ocean Shipping Services, with the remaining 4 percent of cargo being carried by small specialized barge and auto carrier lines.

39. Each of the defendants herein participates in trade association activities that have provided opportunities for information sharing. For example, each of the defendants is a member of the Maritime Cabotage Task Force ("MCTF"), a lobbying group founded in 1995 to oppose efforts to open the market for non-contiguous shipping. Philip Grill of Matson is the Chairman of the MCTF's Board of Directors, and Charles Raymond and Robert Zuckerman of Horizon are Board members. Thus, the executives of Matson and Horizon have close relationships that have fostered the conspiracy herein.

40. Additionally, each of the defendants has ready access to industry data that facilitates effectuation and monitoring of the conspiracy. For example, PIERS, which stands for Port Import Export Reporting Service, collects and distributes, for a fee, data for the maritime industry. This data includes, for example, container size and quantity, cargo quantity and unit of measure, cargo weight and volume. This type of information exchange within the industry has allowed defendants to monitor their conspiracy and verify that it is working.

41. Hawaiian Ocean Shipping Services are homogenous and fungible because almost all cargo shipping today is containerized, and any container vessel can readily be substituted for any other in carrying such cargo containers. Most purchasers decide, and competitors compete, largely based on price. Although fungible between carriers, Hawaiian Ocean Shipping Services are not readily substitutable with other methods of transportation. For example, shipping heavy,

bulky goods by air freight is prohibitively expensive and there obviously are no road or rail routes between the mainland United States and Hawaii.

42. There are substantial barriers to enter the Hawaiian Ocean Shipping Services market, including: (a) entrenched market positions by the incumbent shipping companies; (b) the high costs associated with ocean transport vessels and to build the infrastructure for those vessels; (c) the need to develop a customer base; (d) constraints on port space; and (e) restrictions imposed by the Merchant Marine Act of 1920 at 26 U.S.C. § 100 *et seq.* (commonly referred to as the "Jones Act"). These barriers facilitate the conspiracy alleged herein because they insulate existing shipping companies from new competition and perpetuate the high market concentration.

C. **The Jones Act**

43. The Jones Act is a protectionist statute that prohibits any goods "transported by water, or by land and water . . . between points in the United States . . . either directly or via a foreign port," from being shipped unless the vessel "is wholly owned by citizens of the United States for purposes of engaging in the coastwise trade" and has been issued a "certificate of documentation" or is exempt from documentation. 46 U.S.C. § 55102.

44. The purpose of the Jones Act is to protect American shipping companies. It grants an exclusive privilege to certain United States-made, United States-manned, United States-flagged, and United States Coast Guard-approved vessels to engage in ocean shipping of merchandise or goods to or from United States territories, possessions, or non-contiguous states. These laws are restrictive, prohibiting all other vessels, such as foreign-flagged, foreign-built, foreign-crewed, or even foreign-refurbished vessels, from engaging in this trade.

45. The Jones Act's restriction on the carriage of domestic cargoes to United States-made, United States-flagged, United States-crewed, and United States-owned ships control,

CLASS ACTION COMPLAINT - 11 -

combined with the relatively small size of these trade routes, has resulted in an essentially duopolistic Hawaiian Ocean Shipping Services market.

46. The Jones Act, however, provides no immunity to defendants for their collusion, market sharing, and/or price fixing, and the conspiracy alleged herein is illegal under the Sherman Act.

**D.    Defendants' Collusive Conduct**

47. Defendants have conspired to fix, raise, maintain and/or stabilize prices for Hawaiian Ocean Shipping Services.

48. A major feature of defendants' conspiracy has been to share capacity on each other's ships. Defendants' capacity sharing arrangement allows each carrier to transport cargo on the other's ships at preferential rates. Without this collusion and capacity sharing arrangement, defendants would have to add additional vessels to their routes in order to carry their customers' cargo, which would result in more capacity, more frequent service, and lower prices. The capacity sharing arrangement was the functional equivalent of two duopolists acting like a monopoly. A study published by the United States Department of Transportation's Maritime Administration in May 2006 explicitly equated excess capacity with competition by stating, " ... competitive downward pressure on freight rates may result from overcapacity."

49. In August 2001, Horizon (then CSX Lines) began shipping on Matson's mid-week sailing from Los Angeles, eventually withdrawing its own bi-weekly service. Horizon advertised this mid-week sailing as its "mid-week express." Less regularly, Matson also ships containers on Horizon's sailings when Matson's own sailings are full.

50. Another feature of the trade has been parallel, identical, and near simultaneous imposition of fuel surcharges. Fuel surcharges are a separate component of the cost to ship cargo that is supposed to assist the carrier to recover fuel costs. Matson and Horizon justify their fuel

CLASS ACTION COMPLAINT                                                                                              - 12 -

surcharges by claiming that the surcharges are necessary to offset the increases in fuel costs. In a truly competitive market, the imposition of a fuel surcharge by a carrier that exceeds the actual cost of fuel consumed should create competition from others. The more fuel efficient operator should find ways to capture cargo from the less fuel efficient operator, and pricing would be one of those ways. Here, however, defendants chose not to price compete. A plausible explanation for that lack of competition in this duopoly is that defendants were conspiring. Horizon itself acknowledged the lack of competition in a February 1, 2008 press release, which states "we were able to generate net income and earnings per share" based in part on "a stable rate environment in all three of our offshore markets."

51. Matson and Horizon imposed identical fuel surcharges during the Class Period. Both liners introduced fuel surcharges for the first time in October 1999 and set the surcharges at the same level – 1.75 percent of revenue. Since then, each liner has adjusted fuel surcharges 27 times – each adjustment occurred within days of the competitor's adjustment and was for the same amount. The following chart illustrates defendants' lockstep behavior:

| Effective Month & Year | Matson | Horizon |
|---|---|---|
| October 1999 | 1.75 | 1.75 |
| February 2000 | 2.25 | 2.25 |
| April 2000 | 3.25 | 3.25 |
| October 2000 | 4.25 | 4.25 |
| November 2001 | 3.25 | 3.25 |
| May 2002 | 4.75 | 4.75 |
| October 2002 | 6.0 | 6.0 |
| March 2003 | 7.5 | 7.5 |
| May 2003 | 8.0 | 8.0 |
| June 2004 | 8.8 | 8.8 |

CLASS ACTION COMPLAINT                                                      - 13 -

| Effective Month & Year | Matson | Horizon |
|---|---|---|
| October 2004 | 9.2 | 9.2 |
| April 2005 | 10.5 | 10.5 |
| July 2005 | 11.5 | 11.5 |
| October 2005 | 13.0 | 13.0 |
| January 2006 | 15.0 | 15.0 |
| April 2006 | 18.5 | 18.5 |
| June 2006 | 21.25 | 21.25 |
| October 2006 | 19.75 | 19.75 |
| November 2006 | 18.75 | 18.75 |
| January 2007 | 17.5 | 17.5 |
| March 2007 | 19.5 | 19.5 |
| May 2007 | 20.75 | 20.75 |
| May 2007 | 22.5 | 22.5 |
| August 2007 | 24.0 | 24.0 |
| December 2007 | 29.0 | 29.0 |
| February 2008 | 31.5 | 31.5 |
| April 2008 | 33.75 | 33.75 |

52.     Although Matson and Horizon claimed that these fuel surcharges were necessary to recoup increased costs, the surcharges did not reflect actual fuel cost increases. Fuel costs among ocean liners vary significantly due to a number of unique factors, such as differences in vessels and fuel efficiency, differences in routes, the use of hedging, and individual fuel conservation efforts. It is highly unlikely, if not impossible, that Matson and Horizon incurred identical fuel expense increases. Furthermore, the revenue generated by the fuel surcharges depends on the underlying revenues generated per container and container utilization, both of which vary between the two carriers. Thus, there is no way that these fuel surcharges raised only enough additional revenue to cover the increased costs that each carrier experienced.

CLASS ACTION COMPLAINT - 14 -

53. In addition to the lockstep fuel surcharge increases, Matson and Horizon have acted in lockstep on other matters as well. In the Spring of 2006, Matson announced that it would make surcharge changes whenever it deemed necessary, rather than on a quarterly basis as had been its prior practice. Shortly thereafter, Horizon changed its longstanding policy and announced it would adjust fuel surcharges "in a more timely manner."

54. Defendants' lockstep pattern was broken for the first time in May 2008. On May 9, 2008, Horizon announced that it would raise its fuel surcharge from 33.75 percent to 35.25, percent, effective June 8, 2008. On May 19, 2008, Matson announced that it would maintain its fuel surcharge at the existing 33.75 percent level. Two days later, on May 21, 2008, Horizon announced it would *not* implement the previously announced increase and would instead keep the fuel surcharge at the existing rate. This break in the over 8-year pattern is significant because it occurred only *after* the United States Department of Justice ("DOJ") announced an investigation into the "domestic ocean carriage" industry.

E. **Government Investigation**

55. On April 17, 2008, it was disclosed that the DOJ is investigating "domestic ocean carriage." That same day, defendant Horizon Lines, Inc. acknowledged that federal agents served warrants and a grand jury subpoena on the company in connection with that investigation. Defendant Alexander & Baldwin, Inc. confirmed that it was preparing to receive a DOJ subpoena related to "domestic ocean carriage." Significantly, Alexander & Baldwin, Inc.'s domestic shipping trade, through its subsidiary Matson, is limited to trade between the continental United States and Hawaii and Guam. In a quarterly report filed with the United States Securities and Exchange Commission on May 2, 2008, Alexander & Baldwin stated that "Matson understands that while the investigation currently is focused on the Puerto Rico trade, *it also includes pricing*

CLASS ACTION COMPLAINT                                                    - 15 -

*practices in connection with all domestic trades, including the Alaska, Hawaii, and Guam trades.*" (Emphasis added.)

## VII. FRAUDULENT CONCEALMENT

56. Plaintiff had no knowledge of the combination and conspiracy alleged herein, or of any facts that might have led to the discovery thereof in the exercise of reasonable diligence, prior to April 17, 2008, when it was revealed that the DOJ was investigating "domestic ocean carriage."

57. Plaintiff could not have discovered the existence of the combination and conspiracy alleged herein at an earlier date by the exercise of reasonable due diligence because of the deceptive practices and techniques of secrecy employed by the defendants and their co-conspirators to avoid detection and affirmatively conceal such violations.

58. As a result of the fraudulent concealment of the conspiracy, plaintiff asserts the tolling of the applicable statute of limitations affecting the causes of action by plaintiff and the members of the Class.

## VIII. CAUSE OF ACTION

59. Plaintiff incorporates and re-alleges each allegation set forth in the preceding paragraphs of this Complaint.

60. Beginning at least as early as April 2004, and continuing to the present, defendants and their co-conspirators, by and through their officers, directors, employees, agents, or other representatives, entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for Hawaiian Ocean Shipping Services in the United States, and its territories and possessions, in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

61.  Defendants' unlawful conduct resulted in artificially high prices charged by defendants and their co-conspirators to plaintiff and the members of the Class for Hawaiian Ocean Shipping Services.

62.  Plaintiff and members of the Class paid more for Hawaiian Ocean Shipping Services than they would have paid in a competitive marketplace.

63.  Plaintiff seeks to recover for these overcharge damages.

64.  As a direct and proximate result of defendants' scheme, plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property, in amounts which are presently undetermined. Plaintiff's injuries consist of paying higher prices to purchase Hawaiian Ocean Shipping Services than it would have paid absent defendants' conduct. Plaintiff's injuries are of the type the antitrust laws were designed to prevent and flow from that which makes defendants' conduct unlawful.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A.  That the Court certify this case as a class action under Rule 23 of the Federal Rules of Civil Procedure.

B.  That the contract, combination or conspiracy, and the acts done in furtherance thereof by defendants and their co-conspirators, be adjudged to have been in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

C.  That judgment be entered for plaintiff and members of the Class against defendants for three times the amount of damages sustained by plaintiff and the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees.

D. That defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

(1) continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

(2) communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of any product except to the extent necessary in connection with bona fide sales transactions between the parties to such communications.

E. That plaintiff and members of the Class have such other, further and different relief as the case may require and the Court may deem just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands a jury trial, pursuant to Federal Rule of Civil Procedure 38(b), of all triable issues.

Dated: July 24, 2008

Respectfully submitted,

By: *Harry Shulman*
Harry Shulman, Esq. (209908)
THE MILLS LAW FIRM
880 Las Gallinas Avenue, Suite 2
San Rafael, California 94903
Telephone:  (415) 455-1326
Facsimile:  (415) 455-1327
harry@millslawfirm.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steven A. Kanner
William H. London
Douglas A. Millen
Robert J. Wozniak
**FREED KANNER LONDON &**
**MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone:    (224) 632-4500
Facsimile:    (224) 632-4521
skanner@fklmlaw.com; wlondon@fklmlaw.com;
dmillen@fklmlaw.com; rwozniak@fklmlaw.com

*Counsel for Plaintiff SJ Venture Group, LLC*
*dba Pacific Imports International and the*
*Proposed Class*